## A02A1519. HINSON v. BLACK.
### (572 SE2d 653)

POPE, Senior Appellate Judge.

Luther Black, a Georgia resident, was sitting at the dining table in a rented condominium on the thirteenth floor of an oceanfront resort in Panama City, Florida, when two visibly intoxicated friends — Kameron Goodwin and Kathie Knight — entered. Shortly thereafter Knight, who was 23 years old, fell from the balcony to her death. Knight's mother, Judy Hinson, brought suit against Black alleging that he was negligent in failing to care for the obviously intoxicated Knight and that he assumed a duty to help her but failed to do so. The trial court granted summary judgment in favor of Black, and Hinson appeals.

On an appeal from a grant of summary judgment, we review the evidence de novo and view that evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). Applying that standard, summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c).

Black testified in his deposition that he had seen Knight drinking alcohol earlier in the afternoon from about 12:15 until 3:00 or so at a club, but he was not responsible for her intoxicated state; he did not purchase or serve alcohol to her. Around mid-afternoon he then left the club, returned to the condominium, and was sitting at a table eating boiled peanuts when Goodwin and Knight returned sometime later. The table was located between the open kitchen and the living room, off of which the door to the balcony was located. He was facing the kitchen with his back to the balcony door.

---

[30] See generally *Calhoun v. Bone*, 189 Ga. App. 396, 398 (1) (375 SE2d 871) (1988).

When Goodwin and Knight entered the condominium, they were loud, dancing, and having a good time. Black "knew they were high" and said, "Y'all need to get over on the couch and sit down," or words to that effect, because they were loud and swinging each other around. She never sat down. He also offered Knight some boiled peanuts "to sober her up." The couple continued to be loud and continued to dance in the living room area, and Knight stumbled at one point but caught herself before falling down. At this point, Black was still seated at the table, facing the kitchen, eating peanuts. Black did not tell them again to sit down.

Black does not remember whether the balcony door was open before the couple came in the room; however, Goodwin testified that he may have opened it. But, at some point, Goodwin was standing near the open door, and he said, "Come here, Kathie, let me show you something." Another friend who was in the kitchen might have said, "Don't let her go out there." Black then turned and said the same thing to Goodwin. But before he finished saying it, he saw her feet going over the balcony and her whole body was already over the rails. He testified, "It happened that quick. When I turned, I said, Kameron, don't let her go out there, and it was over." Goodwin was standing in or near the open doorway, possibly just on the balcony, at the time. Black testified that he never left his chair until she fell but at other times said that he sat back down after offering to help Knight sit on the couch. Only four or five minutes passed from the time the couple entered the room until Knight fell.

Black gave a tape-recorded statement to an officer with the Panama City Police Department shortly after the incident that contains some additional facts and some statements that are slightly different from his deposition testimony. In the statement he described Goodwin and Knight as being "pretty tanked up" and "drunk" when they returned to the room. He said that the couple were "[h]ollering, joking, carrying on, dancing, you know, and she was staggering all over everything." Black stated that he had never seen Knight intoxicated before.

He stated that while the couple were dancing, he tried to help her sit down but that Knight said she did not want to sit down. So, Black returned to his seat. Also, after Goodwin asked Knight to come over to the balcony, Black stated, "you could see the balcony door was open and I told him, I said, 'Kameron, don't let her go out there.' And, she said, 'I'll be alright' or something like that. . . ." Black also stated that he told Goodwin, "Don't let her go out there . . . , y'all are drunk and y'all don't need to be out there."

Hinson contends the trial court erred by deciding that "no duty was assumed or created for or by Defendant Black," by finding that "there was no 'foreseeable zone of risk' created by Defendant Black,"

and by granting summary judgment because there were issues of credibility as to Black's testimony. On the latter issue, we have construed any inconsistencies in Black's testimony against him for the purposes of summary judgment. See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986). Accordingly, this enumeration of error is without merit.

The parties agree that the substantive law of Florida applies to Hinson's claim for damages, and we agree. See *Lloyd v. Prudential Securities*, 211 Ga. App. 247 (1) (438 SE2d 703) (1993). Hinson contends that Black owed a legal duty of care to Knight based upon Florida's adoption of the "Good Samaritan" rules articulated in Sections 323, 324, and 324A of the Restatement (Second) of Torts (1965).[1] Section 323 provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

Section 324 provides:

> One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or (b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.

Section 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to pro-

---

[1] These provisions have been applied by Florida courts. See *Blackmon v. Nelson, Hesse, Cyril, Weber &c.*, 419 S2d 405 (Fla. App. 1982) (Section 323); *Florida Dept. of Hwy. Safety &c. v. Kropff*, 491 S2d 1252 (Fla. App. 1986) (Section 324); *Union Park Mem. Chapel v. Hutt*, 670 S2d 64 (Fla. 1996) (Section 324A).

tect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Hinson contends that Black could be liable as follows: under Section 323 if he undertook to render services to Knight; under Section 324 if he failed to secure her safety if she was within his charge or if he left her in a worse position by his failure to continue to aid her; or under Section 324A if he allowed Goodwin to entice Knight onto the thirteenth floor balcony.

Under Florida law, to prevail on a negligence claim, the plaintiff must establish a duty of care, breach of that duty, causation, and damages. *Clampitt v. D. J. Spencer Sales*, 786 S2d 570, 573 (Fla. 2001). The source of the alleged duty in this case is the Good Samaritan law as stated in the above-quoted three sections of the Restatement. See *McCain v. Florida Power Corp.*, 593 S2d 500, 503, n. 2 (Fla. 1992) (regarding sources of a duty). Whether a duty is present is a question of law for the court even though the court may have to make some inquiry into the factual allegations to decide the issue. Id. at 502-503.

Under Florida law, there is no affirmative duty to help an intoxicated adult. See, e.g., *Lipsky v. Padgett*, 730 S2d 818, 819 (Fla. App. 1999); *Gunlock v. Gill Hotels Co.*, 622 S2d 163, 164 (Fla. App. 1993); *Bonds v. Fleming*, 539 S2d 583, 585 (Fla. App. 1989). But "[i]t is axiomatic that an action undertaken for the benefit of another, even gratuitously, must be performed in accordance with [the] obligation to exercise reasonable care. [Cits.]" *Barfield v. Langley*, 432 S2d 748, 749 (Fla. App. 1983). However, "[t]he law does not recognize a cause of action for breach of a gratuitous assumption of duty where performance of the assumed duty has not commenced. [Cits.]" *Gunlock*, 622 S2d at 164.

Hinson's entire case is premised on the idea that Black commenced to provide care to Knight, which if performed reasonably might have prevented her fall. But there is no evidence in the record that Black undertook to provide that care. The only three actions that Black took were to offer Knight peanuts, suggest to Knight that she sit down (which she refused to do), and warn Goodwin not to let Knight on the balcony. He performed all three of these actions without negligence. None of these actions suggest that Black had assumed responsibility for Knight's overall safety. Indeed, after Knight refused to take Black's advice about sitting down, Black returned to his seat and resumed eating peanuts while sitting with his back to the balcony. These facts do not show that Knight submit-

ted to Black's authority or that Black entertained any idea of authority or control over Knight. See *Bryant v. Beary*, 766 S2d 1157, 1159-1160 (Fla. App. 2000) (police not in control of person who did not submit to officer's show of authority). See also *Prelvitz v. Milsop*, 831 F2d 806, 809 (8th Cir. 1987) (mere suggestion that a person who was less intoxicated drive a car, especially by someone who lacks authority to enforce the suggestion, would be insufficient under Minnesota law to constitute an undertaking as defined in § 324A of the Restatement).

The facts show unequivocally that Black did not undertake to render services to Knight sufficient to establish liability under Restatement § 323, but rather he simply offered food, advice, and warnings. He did not "take charge of another who is helpless" under Restatement § 324 or leave Knight in a worse position than when he found her. Finally, Black did not render any services to Goodwin and therefore had no duty under Restatement § 324A.

Separate from the quoted provisions of the Restatement, Florida law provides that when a person creates a "foreseeable zone of risk" a duty is placed on that person "either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." *McCain*, 593 S2d at 503. The question in this case is whether Black's actions created "a generalized and foreseeable risk of harming others." Id. We find that they did not; therefore, no duty arose. Offering food, advice, and warnings to intoxicated people does not create a foreseeable zone of risk. None of Black's actions made the site of the tragic accident more risky than if he had not been there.

Accordingly, Black had no duty to Goodwin or Knight, and the trial court did not err by granting summary judgment to Black. Hinson's arguments in this action attempt to equate recognizing a dangerous situation and commenting upon it, with taking responsibility for preventing any accident that might result from the danger. Just because Black saw Knight stumble into the room, offered her food, suggested she sit down, and warned her about going on the balcony did not make him responsible for her safety.

*Judgment affirmed. Ruffin, P. J., and Barnes, J., concur.*

DECIDED SEPTEMBER 27, 2002 — ▮

*Simpson & Cross, Ralph F. Simpson, Carter & Richbourg, Joseph I. Carter*, for appellant.

*Joseph B. Gray, Jr., Thomas H. Pittman*, for appellee.